**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

SUSAN SANCHEZ,

      Plaintiff-Appellant,

v.

DENVER PUBLIC SCHOOLS,

      DefendantAppellee,

and

DENVER CLASSROOM
TEACHER'S ASSOCIATION,

      Defendant.

No. 97-1120

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-D-738)

---

Elizabeth Lamb Kearney, Law Offices of Elizabeth Lamb Kearney, Denver, Colorado, for Plaintiff-Appellant.

Martin Semple (Patrick B. Mooney and John A. McNamara, with him on the brief), of Semple & Mooney, P.C., Denver, Colorado, for Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, **BALDOCK** and **BRISCOE**, Circuit Judges.

_____

**SEYMOUR**, Chief Judge.

_____

Susan Sanchez brought this action under Title VII, 42 U.S.C. §§2000 et. seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§621 et seq., against her former employer, Denver Public Schools (DPS). The District Court granted DPS's motion for summary judgment on all claims. At issue in this appeal are Ms. Sanchez's allegations that 1) DPS transferred her to a teaching position at Beach Court elementary school in violation of Title VII and ADEA; 2) DPS retaliated against her because she filed a discrimination complaint; 3) DPS failed to place her in a Chapter I van teacher position because of her sex and age, and in retaliation for filing a discrimination complaint; 4) DPS constructively discharged her; and 5) the district court erred in denying her motion under Fed. R. Civ. P. 60 (b).[1] We affirm for the reasons set forth below.[2]

_____

[1]Ms. Sanchez also alleged that the Denver Classroom Teacher's Association was liable for breach of contract and breach of duty of fair representation. She does not appeal the district court's grant of judgment against her on these claims.

[2]The exercise of appellate jurisdiction is appropriate here even though Ms. Sanchez filed her notice of appeal prematurely. This court first issued an order requiring Ms. Sanchez to obtain certification under Fed. R. Civ. P. 54(b) or a final judgment, and later issued a show cause order as to why the appeal should not be dismissed. We then issued a notice on August 11, 1997, that failure to respond within ten days could result in dismissal. The next day the district court

I.

Ms. Sanchez began her employment with DPS in 1979. Prior thereto, she had been a nun, a teacher in Catholic schools for twenty-four years, and a principal for five. In August 1979, she became a teacher at Johnson Elementary, a position she held until the summer of 1993.

In the spring of 1993, the administration at Johnson realized that the fourth grade enrollment would be decreasing the following school year and that they would not be able to retain all three of the fourth grade teachers teaching there. Because none of the teachers volunteered to transfer, the Personnel Subcommittee, consisting of three teachers and the principal, interviewed them to decide who would be transferred. After interviewing all three candidates, the Personnel Subcommittee decided to transfer Ms. Sanchez and retain two younger, male teachers. Upset by this decision, Ms. Sanchez filed a complaint with the teacher's union, and then with the EEOC.

DPS reassigned Ms. Sanchez to a second grade teacher position at Beach

_____

entered a final judgment dismissing the case in its entirety. On August 19, 1997, Ms. Sanchez submitted a copy of the final judgment to this court, thereby ripening her premature appeal. See Lewis v. B.F. Goodrich 850 F.2d 641, 644 (10th Cir. 1988) (en banc). We held in Lewis that "when a district court has adjudicated all remaining outstanding claims before this appellate court acts to dismiss the appeal, we will consider the appeal on its merits rather than dismiss for lack of jurisdiction." Id. In the instant case, we had not yet acted to dismiss the appeal. Appellee's arguments notwithstanding, we see no reason to depart from Lewis.

Court Elementary. Ms. Sanchez's displeasure with the transfer only worsened after interacting with Beach Court's principal, Lucia Aandhal. Relations between the two started off poorly and did not improve throughout Ms. Sanchez's tenure at Beach Court. According to Ms. Sanchez, at the beginning of the first faculty meeting Ms. Aandhal introduced all the new teachers except her, and said something like, "it is so nice to have some beginning bright, young teachers in the building." Aplt. App. at 90-91. At the end of the meeting, and after prompting, Ms. Aandhal introduced Ms. Sanchez and mentioned that she was transferred from Johnson, a fact Ms. Sanchez found embarrassing.

Ms. Aandhal allegedly made several other ageist comments during the school year. In addition, Ms. Aandhal required Ms. Sanchez to bring in a doctor's note whenever she took sick leave, even though other teachers were not required to do so. Later in the year, Ms. Aandhal threatened to put Ms. Sanchez on a plan for improvement.

In April 1994, Ms. Aandhal called Ms. Sanchez into her office to determine whether she would be returning to Beach Court the next year. Although evasive at first, Ms. Sanchez eventually told Ms. Aandhal she was not planning to return. Despite Ms. Aandhal's repeated requests, Ms. Sanchez never put her intentions in writing.

During the spring of 1994, Ms. Sanchez's health deteriorated due to stress

and her doctor recommended that she take a leave of absence from Beach Court. Ms. Sanchez had the administrative choice of either using her sick leave, of which she had accumulated a great deal, or taking a formal leave of absence. She chose the former.

In May 1994, DPS engaged in its annual county-wide process of reassigning teachers within the district. At that time Ms. Sanchez did not ask to be reassigned. She stated she was under the impression that she would be transferred automatically because she thought she had a one-year assignment at Beach Court. Later that summer she requested a transfer, but DPS said it would be unable to grant her one because the reassignment process had already occurred. DPS further told her she would be expected to fulfill her assignment at Beach Court.

According to Ms. Sanchez, in mid-August Estelle Urioste contacted her about a new opening as a Chapter I van teacher, a position in which a DPS teacher would drive to parochial schools to assist students with special needs. They met that day and Ms. Urioste asked Ms. Sanchez about her background, showed her one of the vans used in the program, and requested a copy of her driving record. Ms. Sanchez obtained a copy of her driving record for Ms. Urioste. Later that day, Ms. Urioste called her and told her the position would not be available until December. About a month later, Ms. Sanchez found out from a

friend who was a Chapter I van teacher that DPS had filled the position with a young man, Andy Lurie. Mr. Lurie was a non-tenured, probationary teacher who had not received his Master's degree at that time.

Unable to find a position she considered suitable, Ms. Sanchez continued to take sick leave throughout the fall of 1994. During that time, DPS offered her a position as an English As a Second Language (EASL) teacher, but Ms. Sanchez declined because she had previously applied for a similar job and had been told she was not qualified for it.

As Ms. Sanchez's sick leave began to run out, she decided to opt for early retirement. She applied for early retirement in mid-December, effective January 25, 1995. The agreement could not be rescinded less than 30 days before it was to take effect. On December 30, DPS stated that it would have two openings, and that Mrs. Sanchez would have been able to take either one, except her early retirement rendered her ineligible.[3]

---

[3]In setting out the facts, we do not consider the affidavits Ms. Sanchez submitted with the Fed. R. Civ. P. 60(b) motion she filed after summary judgment was entered against her. That rule allows for relief from judgment for "(1) mistake, inadvertence, surprise, or excusable neglect; [or] (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . ." Nowhere does Ms. Sanchez allege she could not obtain the affidavits prior to the summary judgment hearing; to the contrary, she admits she had the evidence prior to the hearing but felt it "would be cumulative and would not materially assist the Court in its determination." Aplt. App. at 308. The district court declined to consider these affidavits, and did not abuse its discretion in doing so. We decline as well to consider the additional

II.

We review a grant of summary judgment *de novo*, "examin[ing] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (citations omitted). A grant of summary judgment is appropriate if there is no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## A. Sex and Age Discrimination Claims

The plaintiff in both ADEA and Title VII cases bears the initial burden of setting forth a prima facie case of discrimination. The elements of each closely parallel the other. In either case the plaintiff must show: 1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class. See Thomas v. Denny's Inc., 111 F.3d 1506, 1510 (10th Cir. 1997) (race); Corneveaux v. Cuna Mut. Ins. Group, 76 F.3d 1498, 1502 (10th Cir. 1996) (age); Jones v. Unisys Corp., 54 F.3d 624,

evidence on appeal.

-7-

630 (10th. Cir. 1995) (age); <u>Cole v. Ruidoso Mun. Sch.</u>, 43 F.3d 1373, 1380 (10th Cir. 1994) (sex). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant does so, the plaintiff must show the defendant's proffered reasons are pretextual. <u>See</u> <u>Jones</u>, 54 F.3d at 630.

In the instant case, Ms. Sanchez alleges two counts of sex and age discrimination: one based on the transfer to Beach Court and the other on DPS's failure to place her in the Chapter I van teacher position. We consider each in turn.

1. *The Beach Court Transfer*

Ms. Sanchez argues the district court erred in holding that she did not establish a prima facie case of discrimination regarding her transfer to Beach Court.[4] In particular, she disputes the district court's finding that she suffered no adverse employment action.

The Tenth Circuit liberally defines the phrase "adverse employment action." <u>See</u> <u>Gunnell v. Utah Valley State College</u>, 152 F.3d 1253, 1264 (10th. Cir. 1998); <u>Jeffries v. Kansas</u>, 147 F.3d 1220, 1232 (10th Cir. 1998). Such

---

[4]We note that DPS does not base its administrative transfer decisions solely on seniority; instead, it relies on interviews with the Personnel Subcommittee which is composed of teachers and a principal. Such a system comports with the requirements of the ADEA. <u>See</u> <u>Jones v. Unisys Corp.</u>, 54 F.3d 624, 630 n.6 (10th Cir. 1995).

actions are not simply limited to monetary losses in the form of wages or benefits. See Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir. 1996). Instead, we take "a case-by-case approach," examining the unique factors relevant to the situation at hand. Jeffries, 147 F.3d at 1232. Nevertheless, we will not consider "a mere inconvenience or an alteration of job responsibilities" to be an adverse employment action. Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993); see also Burlington Indus., Inc. v. Ellerth, 118 S.Ct. 2257, 2268 (1998) (conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir. 1989) (principal's change in assignment was not an adverse employment action despite her increased commute and belief that the public perceived the transfer "as a 'nudge towards retirement'").

We agree with the district court that Ms. Sanchez's transfer was not an adverse employment action. Ms. Sanchez points only to the fact that her commute increased from between five and seven minutes to between thirty and forty minutes, and that the other two teachers at Johnson did not volunteer to transfer schools. Ms. Sanchez admits that her salary and benefits remained the same, that she continued to teach at the elementary school level, and that the decreasing

student population at Johnson prompted the transfer. Although she claims the Beach Court assignment was only for a year, she knew that after that year she would remain a DPS teacher, and she expected DPS to reassign her. We do not find any special circumstances unique to this case that show this employment action was anything beyond a mere inconvenience or alteration of job responsibilities. Because Ms. Sanchez experienced a purely lateral transfer, we agree with the district court that despite her personal discomfort she failed to establish a prima facie case of discrimination.

2.    *The Van Teacher Position*

Ms. Sanchez alleges that by failing to place her as a Chapter I van teacher, DPS discriminated in violation of ADEA and Title VII and unlawfully retaliated against her. The district court addressed only the retaliation claim and did not directly discuss the Title VII or ADEA discrimination claims arising out of DPS's failure. We need not remand, however, because this claim can be resolved on the basis of undisputed facts and for substantially the same reasons applicable to Ms. Sanchez's Beach Court discrimination claim.

As set out above, in order to establish a prima facie case of discrimination under either Title VII or ADEA, Ms. Sanchez must establish that the challenged conduct constituted an adverse employment action. The record is undisputed that at the time Ms. Sanchez applied for the position as a Chapter I van teacher, she

was employed with DPS.[5]  It is also undisputed that the van position would have paid the same salary and benefits she was already receiving, and would have involved substantially similar duties.  Thus, the position would have been a purely lateral transfer for Ms. Sanchez involving at most an insignificant alteration in job responsibilities.  While Ms. Sanchez obviously viewed the change as a positive one, under the law cited above, and in the unique circumstances of this case, her failure to receive the position was not an adverse employment action for the same reasons her transfer to Beach Court was not.[6]

## B.  **Retaliation Claims**

A plaintiff claiming unlawful retaliation for asserting a Title VII or ADEA claim also bears the initial burden of establishing a prima facie case.  To do so she must show: 1) she was engaged in opposition to Title VII or ADEA discrimination; 2) she was subjected to adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action.  See Gunnell, 152 F.3d at 1262-63; Jeffries, 147 F.3d at 1231;

---

[5]This case does not involve an employer's refusal to reassign an employee to a vacant lateral position in the wake of a reduction in force, which refusal to transfer could constitute an adverse action.  See Anderson v. Phillips Petroleum Co., 861 F.2d 631, 635 (10th Cir. 1989).

[6] If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action.  See, e.g., Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449-50 (11th Cir. 1998) (collecting cases).

Anderson v. Phillips Petroleum Co., 861 F.3d 631, 634 (10th Cir. 1988). A meritorious retaliation claim will stand even if the underlying discrimination claim fails. See Jeffries, 147 F.3d at 1231.

Ms. Sanchez contends DPS unlawfully retaliated against her on two occasions for filing a discrimination claim. She alleges first that Ms. Aandhal retaliated against her by subjecting her to a hostile environment, and second that DPS retaliated against her by failing to place her in the Chapter I van teacher position. Again, we consider these claims in turn.

1.      *Retaliation at Beach Court*

The district court granted summary judgment on Ms. Sanchez's Beach Court retaliation claim, holding that she did not suffer an adverse employment action because she clearly had a job offer for the following year. We affirm the district court's ruling, albeit under a slightly different analysis.

Ms. Sanchez points to several encounters with Ms. Aandhal to support her contention that she was subjected to retaliatory adverse employment action at Beach Court. Ms. Aandhal allegedly made several ageist remarks over the course of the school year, including calling an older substitute teacher "an old fossil" and welcoming "bright young teachers" at the first staff meeting. In addition, Ms. Sanchez believed she was the only teacher required to bring a doctor's note when she was sick. Ms. Aandhal also threatened to write her up for insubordination

when Ms. Sanchez walked out of her office in the middle of a meeting to tend to her class. Finally, Ms. Sanchez asserts that Ms. Aandhal threatened to put her on a plan for improvement if she returned to Beach Court.

This conduct simply does not rise to the level of a materially adverse employment action sufficient to satisfy the second prong of the prima facie case. Courts considering the issue have held that "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments'" such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status. See, e.g., Robinson v. City of Pittsburgh, 120 F.3d 1286,1301 (3d Cir. 1997); see also Sweeney v. West, 149 F.3d 550, 556-57 (7th Cir. 1998).

> Retaliatory conduct other than discharge or refusal to rehire is thus proscribed by Title VII only if it alters the employee's "compensation, terms, conditions, or privileges of employment," or adversely affect[s] his [or her] status as an employee." It follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "[o]therwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"

Robinson, 120 F.3d at 1300 (alteration in original) (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)). Although we appreciate Ms. Sanchez's distress over Ms. Aandhal's alleged disagreeable conduct, that conduct did not significantly affect her employment status and therefore did not constitute adverse employment action remediable under Title VII.

-13-

## 2. *Retaliation by Failure of Placement in Van Teacher Position*

Ms. Sanchez also asserts that Ms. Urioste unlawfully retaliated against her by failing to place her in the Chapter I van teacher position. The district court denied this motion because it found no evidence of a causal connection between Ms. Sanchez's protected activity and the conduct she asserts was retaliatory.

We have already determined that Ms. Sanchez's failure to obtain the position was not adverse action with respect to her discrimination claim. That holding is equally applicable here and is sufficient to defeat her retaliation claim as well. In addition, as the district court noted, Ms. Sanchez did not establish a causal connection between the filing of her discrimination claim and her nonplacement in the van teacher position. Ms. Sanchez claims that Anna Marie Sandoval, an activist involved in DPS and a friend of Ms. Urioste, called her to ask what her age was after Ms. Sanchez did not get the van teacher position. Ms. Sandoval showed no sign of knowing about Ms. Sanchez's discrimination claims, or of having discussed them with Ms. Urioste. Ms. Urioste testified in her deposition that she had no knowledge of Ms. Sanchez's discrimination claim. Moreover, according to Ms. Sanchez, Ms. Sandoval's phone call took place after the decision was already made. Even when all reasonable inferences are drawn in favor of Ms. Sanchez, she has failed to establish a prima facie case of retaliation. We thus affirm the dismissal of this retaliation claim.

## C. **Constructive Discharge**

Ms. Sanchez also contends the district court erred by granting summary judgment on her claim that DPS constructively discharged her by forcing her to accept early retirement rather than finding her a suitable transfer. We agree with the district court that DPS's actions do not amount to a constructive discharge.

Constructive discharge occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986). "Essentially, a plaintiff must show that she had 'no other choice but to quit.'" Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992)). The conditions of employment must be objectively intolerable; the "plaintiff's subjective views of the situation are irrelevant." Id.

According to Ms. Sanchez, the hostile work environment at Beach Court, in conjunction with DPS's insistence that she return to her placement there and its failure to find her a suitable alternative transfer, resulted in her constructive discharge. As we discussed above, however, the work environment at Beach Court, while unpleasant, was not adverse employment action. Furthermore, it is undisputed that Ms. Sanchez did not apply for a transfer in May when that process

occurs for DPS.  Later, DPS told her there might be some openings in January, at the semester break.  Instead of taking her position at Beach Court temporarily and waiting to see if a more suitable position would open up, she chose to take early retirement.  While we have no doubt that Ms. Sanchez found her working conditions extremely difficult, and that the stress exacerbated her health problems, we cannot conclude that objectively DPS's actions left Ms. Sanchez with no choice but to resign.  We therefore affirm the district court's dismissal of the constructive discharge claim.

III.

In sum, we **AFFIRM** the district court's grant of summary judgment in favor of defendants in all respects.