**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

RANDY BURKHOLZ,

      Plaintiff-Appellant,

v.

JACK A. JOYCE, an individual;
GRANITE SCHOOL DISTRICT, a
political subdivision of the State of
Utah,

      Defendants-Appellees.

No. 98-4171
(D. Utah)
(D.Ct. No. 96-CV-252)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **SEYMOUR, BRORBY**, and **EBEL**, Circuit Judges.

_____

      Plaintiff-Appellant Randy Burkholz brought this action raising 42 U.S.C.

§ 1983 and other claims against Defendants-Appellees Jack Joyce, his former

teacher, and Granite School District, Mr. Joyce's employer, and seeking damages

for injuries Mr. Burkholz suffered as a result of years of alleged sexual abuse by

---

    [*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Mr. Joyce. After certifying a question to the Utah Supreme Court, the district court determined the applicable statute of limitations barred Mr. Burkholz's claims, granted defendants' motions for summary judgment, and dismissed the complaint with prejudice. Mr. Burkholz appeals, arguing summary judgment is inappropriate because his expert's testimony creates a genuine issue of material fact. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Mr. Burkholz attended schools in the Granite School District from 1981 until he graduated from high school in June 1986. During these six years, Mr. Joyce – one of Mr. Burkholz's seventh grade teachers – engaged in a sexually abusive relationship with Mr. Burkholz.[1] The sexual abuse continued after Mr. Burkholz's eighteenth birthday on April 25, 1986, and Mr. Burkholz was fully aware of the facts surrounding the sexual abuse at the time of his graduation in June of that same year. Despite his personal awareness of what had transpired, Mr. Burkholz did not discuss the nature of his relationship with Mr. Joyce with anyone until December 1987, approximately nineteen months after graduation.

---

[1] Because we review the facts and reasonable inferences therefrom in the light most favorable to Mr. Burkholz as the party opposing summary judgment, we will assume, but do not decide, the allegations of sexual abuse are true. *See* discussion *infra* at 7.

The December 1987 disclosure came in the context of a pre-mission interview between Mr. Burkholz and a bishop of his church. The interview is a prerequisite for all church members who wish to participate in a religious mission on behalf of the church. During the interview, in response to a direct question, Mr. Burkholz admitted to his involvement in a homosexual relationship with Mr. Joyce. However, Mr. Burkholz did not discuss the abuse again until 1994. He claimed in his deposition that during the intervening time between the December 1987 pre-mission interview and 1994, he was not even aware the abuse occurred.[2] Mr. Burkholz's expert witness, Dr. James L. Poulton, a clinical psychologist familiar with this case, stated in his affidavit he believed "Mr. Burkholz's revelation of a homosexual relationship to his bishop was an example of a form of dissociation," and that "the most likely explanation for his behavior [from 1987, after the interview, until 1994] was that he had indeed repressed his memories of

---

[2] In contrast, Mr. Burkholz agreed with counsel's characterization of his state of mind during the interview in 1987 as an ability to remember the facts surrounding the abuse, but an inability to understand the emotional ramifications of the abuse:

Q: So at age 19, then, when you were discussing these events with your bishop, you could remember that it was Mr. Joyce that you had had the sexual contact with, but you had disassociated or disconnected yourself from the emotional and psychological ramifications of that. Is that accurate?

A: Yes.

the abuse." Dr. Poulton defined "dissociation" as "a separation or nonintegration of emotions, thoughts, sensations, or behaviors from the current stream of consciousness," and "repression" as "a special case of dissociation."

Mr. Burkholz commenced this lawsuit on February 28, 1996, at least fourteen months after he regained cognizance of the events underlying this suit and nearly ten years after the abuse ended. The suit asserted a multitude of claims.[3] Mr. Joyce and the school district moved for summary judgment, arguing the relevant statutes of limitations barred all claims. Mr. Burkholz responded by asserting the limitations periods were tolled by his minority status, mental disability, and repression of the events underlying the suit (*i.e.*, the discovery rule).

---

[3] Mr. Burkholz sued Mr. Joyce for:

> negligence, breach of fiduciary duty, violation of civil rights pursuant to 42 U.S.C. § 1983, violations of governmental ethics, and various intentional torts including: assault and battery, intentional infliction of emotional distress, false imprisonment, sexual assault, sexual abuse, child abuse, kidnaping a child, rape of a child, sodomy on a child, seduction of a child, and molestation of a child.

The claims asserted against Granite School District alleged "negligence, aiding and abetting, conspiracy, failure to report, violations of the Utah Governmental Ethics Act, violation of civil rights pursuant to 42 U.S.C. § 1983, and breach of contract."

In addressing the statute of limitations issues, the district court first divided Mr. Burkholz's claims into two groups: those governed by a one-year statute of limitations, and those subject to a four-year limitation period. The district court granted the summary judgment motions on the claims governed by a one-year limitation period – the assault, battery, false imprisonment, and seduction causes of action.[4] The district court also determined the minority and mental disability tolling doctrines did not apply in this case. Therefore, the sole remaining issue centered on whether the application of the discovery rule tolled the four-year statute of limitations for the § 1983 and other pending claims.

In attempting to resolve this issue, the district court recognized Utah courts have applied the discovery rule to toll the relevant statute of limitations in child sex abuse cases when victims repressed the memories of abuse continuously from the time of the abuse. However, the district court found the instant case inapposite because "the evidence is clear that [Mr. Burkholz] knew of the operative facts underlying his causes of action for approximately nineteen months, the time between his eighteenth birthday and his pre-mission interview."

_____

[4] Mr. Burkholz does not appeal this decision, nor does he assign error to the district court's findings that Mr. Burkholz did not qualify under the minority or mental disability tolling doctrines.

Consequently, the district court faced a situation where the victim's repression became sandwiched between two periods of awareness – a situation the Utah courts had never directly addressed.

Concerned that withholding application of the discovery rule in this instance would effectively shorten the statute of limitations from four years to the initial nineteen-month period of awareness, the district court certified the following question to the Utah Supreme Court:

> Whether the exceptional circumstances version of the discovery rule tolls the applicable statute of limitations where, during the limitations period, the plaintiff's knowledge of the operative facts underlying his cause of action is interrupted by a period of psychological repression during which plaintiff is unaware of such facts.

The Utah Supreme Court answered the question in the negative, stating "in our view, the discovery rule simply does not apply where the plaintiff, at some point during the limitations period, has knowledge of the facts underlying his claim." *Burkholz v. Joyce*, 972 P.2d 1235, 1237 (Utah 1998). Based on he Utah Supreme Court's ruling, the district court granted the motions for summary judgment on the remaining claims and dismissed the suit with prejudice. Mr. Burkholz then brought this timely appeal.

"We review a grant of summary judgment de novo, applying the same

standard as the district court." *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1033

(10th Cir. 1998), *cert. denied*, 119 S. Ct. 1756 (1999).  "Summary judgment is

appropriate 'if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(c)).  In this

instance, we view the facts and reasonable inferences therefrom in the light most

favorable to Mr. Burkholz as the party opposing the motion.  *See Sanchez v.

Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998).  However, "'[o]nly

disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment.'" *Id*. (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Mindful of these principles, we begin by pointing out much of Mr.

Burkholz's argument on appeal is a reproduction of his brief to the Utah Supreme

Court, focusing on whether the certified question ought to be answered in the

affirmative or the negative.[5]  While we may agree with some of Mr. Burkholz's

---

[5] Because the defendants did not appeal the federal district court's certification of this question to the Utah Supreme Court, we find it unnecessary to address Mr. Burkholz's argument against applying other Utah Supreme Court cases initially cited by the defendants, which the defendants contended answered the certified question.

public-policy arguments which support application of the discovery rule in this case, the Utah Supreme Court clearly did not. "For section 1983 actions, state law determines the appropriate statute of limitations and accompanying tolling provisions." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). In response to the district court's certified question, the Utah Supreme Court issued a clear statement of the applicable law in Utah. Whether we would answer the question differently is immaterial. The Utah Supreme Court has spoken, and on this issue of state law, we are in no position to question the propriety of that distinguished court's decision.

Having disposed of the certification issue, the only issue remaining on appeal is whether the district court erred by finding "the evidence is clear that [Mr. Burkholz] knew of the operative facts underlying his causes of action for approximately nineteen months, the time between his eighteenth birthday and his pre-mission interview." Under the Utah Supreme Court's decision, the discovery rule tolling the statute of limitations cannot apply if Mr. Burkholz possessed such knowledge.[6] Mr. Burkholz disagrees with the district court's characterization of

---

[6] Mr. Burkholz attacks the certification result by arguing the Utah Supreme Court "erroneously conclud[ed] that it had no choice but to follow the federal district court's incorrect finding [he] was aware of the operative facts underlying his claims for a period of nineteen months." However, the Utah court clearly explained that its obligations on a certified question did not rest on a determination of the facts, but on simply answering the

the evidence on this issue and argues his own deposition and Dr. Poulton's affidavit raise genuine issues of material fact which make summary judgment inappropriate. We disagree.

In his deposition, Mr. Burkholz admitted knowing the facts surrounding his relationship with Mr. Joyce:

Q: In your complaint you allege that the incidents with Mr. Joyce took place from the time you were in the seventh grade through the time that you were in the 12th grade. Is that correct?

A: That's right.

Q: And so some of these incidents that you claim took place in – when you were a senior in high school; is that correct? ...

A: That is right. Yeah.

Q: You became 18 years of age on April 25th, 1986, right?

A: That's right.

Q: And graduated from high school six weeks or two months after you became 18?

A: Right.

Q: At the point in time when you graduated from high school, you knew about the physical acts that you're claiming Mr. Joyce had done to you, right?

---

certified question of law. *See Burkholz*, 972 P.2d at 1236.

A: I knew of the physical acts, yeah.

Q: At the point that you graduated?

A: Yeah.

Mr. Burkholz stated the reason he did not tell anyone about the sexual abuse from its inception until the time he graduated from high school was because he felt embarrassed and shameful about what happened. However, his explanation changed somewhat when asked why he did not discuss the abuse with anyone during the period between graduation in June 1986 and his revelation of the relationship with Mr. Joyce in the pre-mission meeting with his bishop in December 1987:

> It was just, you know, a pattern of I think – forgetfulness, you know. It's – it wasn't something that I thought about when I was with my friends, when I was with family. There was no reason to tell anyone.

Q: Okay. Is it fair to say you tried to put it out of your mind –

A: Yeah.

Q: – not to dwell on it?

A: Exactly. Yeah. That's right.

Finally, after the meeting in December of 1987, Mr. Burkholz said his memory of the sexual abuse remained hidden, "kind of like a black … blob inside of me …. I wasn't even aware of it."

In his affidavit, Dr. Poulton indicated that during the pre-mission interview with the bishop,

> Mr. Burkholz could indeed remember some aspects of the events with Mr. Joyce, [but] he was clearly unable to remember other, more significant aspects. The aspects that were not available to him at that time included the specific details of the contacts he had with Mr. Joyce (*i.e.*, the behavioral aspects of the memories) as well as the emotional details of those contacts (*e.g.*, memories of the fear, anger and disgust he had felt with Mr. Joyce).
>
> Moreover, he was unable to conceptualize Mr. Joyce's treatment of him as an abusive crime that was committed against him. Instead, he was only able to understand his contacts with Mr. Joyce from the standpoint of his own guilt. This acceptance of full moral responsibility is a psychological position that is very common in victims of childhood sexual abuse.

Dr. Poulton went on to give his opinion that Mr. Burkholz repressed all memories of the abuse after the meeting with the bishop until 1994. Because the district court accepted this opinion for the purposes of summary judgment decision, Mr. Burkholz pins his entire appeal on Dr. Poulton's characterization of Mr. Burkholz's state of mind during the pre-mission interview. Nevertheless, this strategy fails to prove the existence of a genuine issue of material fact for several reasons.

First, Mr. Burkholz misconstrues the appropriate standard for tolling the statute of limitations. "Before a period of limitations may be tolled under ... the discovery rule, an initial showing must be made that the plaintiff did not know

-11-

and could not reasonably have discovered the *facts* underlying the cause of action in time to commence an action within that period." *Walker Drug Co. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995) (emphasis added). Dr. Poulton's affidavit does not dispute Mr. Burkholz remembered the abuse on the day of the pre-mission interview with his bishop, but instead focuses on the depth of Mr. Burkholz's understanding of the actual events and the ramifications of the abuse. The Utah Supreme Court has been careful to draw a distinction between a totally repressed memory and the case of a plaintiff remembering the abuse, but not realizing the implication of the abuse. *See Olsen v. Hooley*, 865 P.2d 1345, 1349 (Utah 1993)[7]; *see also O'Neal v. Division of Family Serv.*, 821 P.2d 1139, 1144-45 (Utah 1991) (plaintiff recalled abuse, but was unable to reveal abuse to others). The relevant inquiry is whether Mr. Burkholz remembered the events of abuse, not whether he was able to recognize himself as a victim of abuse.

However, we need not base our decision on this rationale. Even if we accept Mr. Burkholz's characterization of Dr. Poulton's affidavit as stating Mr. Burkholz had no memory of the actual events of abuse during the interview with

---

[7] Despite Mr. Burkholz's contentions, the facts of his case are not analogous to those in *Olsen*. In *Olsen*, the victim totally repressed all memories of the abuse and did so from the moment the abuse first occurred. *See* 865 P.2d at 1346, 1349.

-12-

the bishop, we must affirm the district court. Dr. Poulton's affidavit restricts itself to the actual interview and the years that followed. The affidavit makes no mention of the time period from Mr. Burkholz's eighteenth birthday in 1986, through graduation when he admits he was aware of the sexual abuse, up until the day of the interview in 1987. Dr. Poulton begins his analysis by stating "[t]here are two major questions to answer concerning Mr. Burkholz's behaviors between 1987, when he first spoke with his bishop about a 'homosexual relationship' he had, and 1994, when he first revealed his history of sexual abuse," and concludes by stating his belief that "Mr. Burkholz has exhibited behaviors most consistent with the processes of dissociation, in the interview with the bishop in 1987, and repression, between the years 1987 and 1994." Thus, Dr. Poulton's affidavit fails to dissuade us that Mr. Burkholz knew of the sexual abuse during the nineteen-month period in issue.

Finally, in its motion for summary judgment, Granite cited to portions of Mr. Burkholz's deposition to show Mr. Burkholz remembered the sexual abuse in 1986. In response, Mr. Burkholz made two conclusory statements: the first claiming Dr. Poulton's affidavit suggests the repression began during the period of abuse; and the second proclaiming "confession" to the bishop was only a limited memory of recent experiences, not a recollection of the entire history of

abuse, and therefore the statute of limitations was tolled as to the earlier events of abuse. These statements were not only conclusory, but constitute misrepresentations of the affidavit's contents. Because he failed to point to specific facts rebutting Granite's contentions, Mr. Burkholz failed to meet his burden on summary judgment. *See Akin*, 156 F.3d at 1034. For these reasons, we hold the district court did not err by determining Mr. Burkholz knew the facts underlying his causes of action, properly applied the law of Utah as articulated by the Utah Supreme Court, and correctly granted summary judgment to Granite and Mr. Joyce. We **AFFIRM**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge