**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

IVY KIRK, an individual,

    Plaintiff-Appellant,

v.

THE CITY OF TULSA,
OKLAHOMA, a municipal
corporation,

    Defendant-Appellee.

No. 02-5138
(D.C. No. 01-CV-433-EA)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**

---

Before **TACHA**, Chief Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument. This order and judgment is

not binding precedent, except under the doctrines of law of the case, res judicata,

and collateral estoppel. The court generally disfavors the citation of orders and

judgments; nevertheless, an order and judgment may be cited under the terms and

conditions of 10th Cir. R. 36.3.

Plaintiff Ivy Kirk appeals from summary judgment entered for defendant City of Tulsa on her claims that (1) her supervisor maintained a hostile work environment and discriminated against her on the basis of sex, and (2) the City altered and ultimately terminated her employment status in retaliation for her complaints about her supervisor's conduct, in violation of Title VII of the Civil Rights Act of 1964. As to the hostile environment and discrimination claims, the district court held that Plaintiff could not show actionable misconduct based on the actions she cited and that the City had in any event established as a matter of law that it could not be held vicariously liable for the supervisor's conduct under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). As to the retaliation claim, the district court held that Plaintiff could not link her complaints about her supervisor either to the reclassification and competitive re-advertisement of her position (following a substantial alteration of duties in accordance with an outside consultant's study of city jobs) or to her separation from the City on the basis of an undisputed mental disability. On de novo review, *see Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998), we agree with the district court that Plaintiff's evidence of sexual hostility, discrimination, and retaliation was legally deficient and, accordingly, affirm.

The district court's order contains a thorough recitation of the relevant facts, admitted and contested. We will not repeat that here. A summary of the main points will suffice to frame the legal discussion that follows.

Plaintiff worked in the City's Urban Development Department (UDD) from July 1997 until May 2001, supervising a staff responsible for managing and marketing City properties. In September 1999 Tony Lombardi was hired to replace Plaintiff's immediate supervisor. In her deposition Plaintiff described Lombardi's abrasive management style, which he allegedly admitted was to tear people down, take away their power and make them feel inadequate, and then gradually build them back up into the type of employees he wanted. She said that at first he made her feel that he appreciated her work but he inappropriately commented about other people. For example, he referred to a Jack Page from the City public works department as an idiot and likened a meeting with him to "being in a circle jerk." Although she now cites this offensive remark in support of her sexual hostility claim, she specifically noted in her deposition that it was not directed at her but at the man Lombardi was insulting.

In time Plaintiff's relationship with Lombardi soured. Hostile confrontations between Lombardi and members of Plaintiff's staff (male and female) erupted and Lombardi interfered with her supervisory authority. She also

began to hear of rude comments that he had made to others in reference to her. In the midst of all this, Plaintiff suffered from an escalation of her bipolar disorder.

Meanwhile, the City hired a consulting firm to conduct a broad review (the Hay Study) of its professional occupational structure. As part of the Hay Study, Plaintiff prepared a revised description of her job, in which she integrated duties from a number of different positions, some performed by her former supervisor. In the end, as Plaintiff remarked in her deposition, she effectively wrote herself out of the job, in that the committee implementing the Hay Study findings reclassified it several levels higher and decided, in May or June 2000, that it should be advertised for competitive placement.

By this time Plaintiff's mental condition had deteriorated to such an extent that she applied for disability benefits. In August 2000, while her application was under consideration by the City's disability review committee, Plaintiff met with the City's director of human resources to discuss the reclassification of her position. During the meeting she also complained of sexual harassment by Lombardi, prompting an investigation that failed to substantiate her allegations. Her employment with the City formally ended when the disability review committee granted her a disability separation based on the diagnosis of her doctor and the concurrence of the City physician. Following an unsuccessful EEOC

complaint, she commenced this action, and the City eventually moved for summary judgment.

The district court began its analysis by considering the City's associated motion to strike certain items of evidence offered by Plaintiff. Two particular exhibits are material here. The first is a deposition excerpt in which a UDD contractor stated that he had heard secondhand that Lombardi had made disparaging comments about Plaintiff's handling of a project. The district court properly rejected this hearsay evidence. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995). The second exhibit is simply a list of the comments and actions by Lombardi which Plaintiff relies on for her hostile-environment and discrimination claims. To explain its proffer as an item of evidence, Plaintiff asserted that the list was attached to an e-mail she had sent to the head of UDD, Brenda Miller, giving notice of her complaints about Lombardi three months before she discussed those complaints with the City's human resource director (and prior to the reclassification of her job). As none of the e-mail exchanges between Plaintiff and Miller at the pertinent time contained any indication that this loose, unsigned sheet of paper had been sent as an attachment, the district court struck the exhibit. Given the lack of foundation, this ruling was a sound exercise of the district court's discretionary authority over the admission of

evidence on summary judgment. *See Roe ex rel. Roe v. Keady*, 329 F.3d 1188, 1194 (10th Cir. 2003).

### Sexual Hostility/Discrimination

Plaintiff claims that her immediate supervisor, Lombardi, created a sexually hostile work environment and discriminated against her on account of her gender. As explained below, we agree with the district court that the incidents cited by Plaintiff do not show the focused animus and severe offensiveness required to establish an actionable hostile work environment. *See generally O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999) (holding that, to defeat summary judgment, hostile-environment plaintiff "must show that a rational jury could find that the workplace is *permeated* with *discriminatory* intimidation, ridicule, and insult[] that is sufficiently *severe or pervasive* to alter the conditions of [her] employment and create an abusive working environment." (internal quotation marks omitted and emphasis added)). Nor do these incidents involve the kind of adverse employment action necessary to give rise to a cause of action for gender-based discrimination distinct from a hostile-environment claim. *See generally Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531-32 (10th Cir. 1998) (affirming summary judgment for employer in sex-discrimination case because instances of disparate treatment did not rise to level of adverse employment action).

We list below the alleged instances of misconduct by Lombardi discussed in Plaintiff's briefs (most of which he denies). Several of these incidents were discounted by the district court because they were "supported by no evidence other than [Plaintiff's] own allegations in deposition or affidavit form." R., doc. 54 at 11. The testimony and averments of a party, however, are legally competent to oppose summary judgment, notwithstanding their inherently self-serving nature, provided they are "based on personal knowledge and set forth facts that would be admissible in evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *see, e.g.*, *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir. 1992). We therefore consider all the following alleged conduct by Lombardi in reviewing the propriety of summary judgment here:

1. Making the remarks about Jack Page noted above;

2. Stating that a female employee with a bad attitude "just needs to get her hysterectomy and retire;"

3. Claiming that he "was brought in to straighten Brenda [Miller] up;"

4. Blaming a female employee (Pam Bright) during a staff meeting for a delay attributable to a male colleague (Ray Meldrum), and later apologizing for "using Pam to straighten Ray Meldrum up;"

5. Stating to several staff members that "the problem with this job is that god damn Ivy;"

6. Mimicking one of Plaintiff's manic attacks and referring to her as "crazy;"

7.  Advising Plaintiff's staff to report directly to him rather than through her; and

8.  Blurting out in a meeting with building contractors which Plaintiff did not attend that problems they were encountering with a project she worked on "were because of that god damn cunt Ivy Kirk." (Plaintiff also claims that Lombardi called her a "bitch," but the deponent she relies on for this statement actually disavowed any recollection of the alleged incident.)

Two of these incidents were sexually offensive remarks about women, of which one was directed at Plaintiff, although made in her absence. Nevertheless, even though Lombardi's alleged behavior is reprehensible, the correction of indiscriminate boorishness and vulgarity in the workplace is not the function of a Title VII action for a sexually hostile environment. *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998). Considering all of the comments and conduct noted above, Plaintiff has failed to show harassment sufficiently severe or pervasive to support a hostile-environment claim under Title VII. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (holding five instances of sexually inappropriate conduct characterized as "unpleasant," which occurred over a span of sixteen months, insufficient to establish actionable "hostile or abusive" work environment under controlling standards).

Plaintiff's claim of gender discrimination also fails. To support this claim, Plaintiff had to show "that the challenged conduct constituted an adverse

-8-

employment action." *Sanchez*, 164 F.3d at 532. "To be an adverse action, the employer's conduct must be materially adverse to the employee's job status." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003) (internal quotation marks omitted). This standard is satisfied by "a significant change in employment status, such as . . . firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (internal quotation marks omitted). It does not include, however, simply "unsubstantiated oral reprimands and unnecessary derogatory comments". *Id.* at 1214 (internal quotation marks omitted). Nor does it include, as here, "a loss of authority that was [not] severe or prolonged enough to constitute a 'materially adverse' reduction in job responsibilities." *Id.* We recognize that the reclassification of Plaintiff's position and the decision to grant her a disability separation entailed significant changes in her employment status, but she presented no evidence connecting Lombardi to either action.

**Retaliation Claim**

To support her retaliation claim, Plaintiff had to show that (1) she engaged in protected opposition to Title VII discrimination; (2) she suffered a subsequent or contemporaneous adverse employment action; and (3) a causal connection existed between the protected activity and adverse action. *Penry*, 155 F.3d at 1263-64. Plaintiff refers to her complaints about Lombardi as the protected

activity, cites the reclassification of her position and her later disability separation from the City as adverse employment actions, and insists that there was a causal nexus. The district court rejected her claim, holding that she had not demonstrated a triable issue of causation. We agree.

In assessing causation it is essential to identify the protected activity to which the adverse employment action is attributed. For this, Plaintiff relies on her aborted effort to complain about Lombardi to Brenda Miller in May 2000, which predated the reclassification of her position and hence could be causally related to it. But the record indicates that Plaintiff asked Miller only in general terms to talk to her about Lombardi, with whom Plaintiff and various members of her staff (male and female) had had numerous professional conflicts, and that she abandoned the effort when Miller's schedule necessitated some delay. There is no cited evidence showing that Miller was informed that Plaintiff was acting in opposition to Title VII discrimination. Consequently, the fact that the reclassification of Plaintiff's position occurred after this episode cannot establish causation. *Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10 th Cir. 2002) ("employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII").

Finally, we consider the possible causal effect of the complaints about Lombardi which came to light during Plaintiff's meeting with the City's human

resource director. Because this meeting did not take place until after the reclassification of Plaintiff's position (and the decision to advertise the opening), our causation inquiry is limited to Plaintiff's later disability separation from the City. Of course, Plaintiff herself requested disability leave; so one would think that retaliation would take the form of denying her request rather than granting it. In any event, as the district court noted, "there is no evidence that Miller had anything to do with the decision by the disability review committee to grant Plaintiff a disability separation, or that the committee based its decision on anything other than Plaintiff's mental health information from the City Physician and [P]laintiff's own doctors." The district court acknowledged that the human resource director who had heard Plaintiff's complaints about Lombardi was on the committee, "but he abstained from voting on her separation." This analysis properly disposed of the remainder of Plaintiff's retaliation claim.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED. The mandate shall issue forthwith.

Entered for the Court

Harris L Hartz
Circuit Judge