FILED
United States Court of Appeals
Tenth Circuit

**July 21, 2025**

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BETHANY SCHEER,

     Plaintiff - Appellant,

v.

SISTERS OF CHARITY OF
LEAVENWORTH HEALTH SYSTEM,
INC.,

     Defendant - Appellee.

------------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Amicus Curiae.

No. 24-1055

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:20-CV-03793-DDD-MEH)**
_____

Ralph E. Lamar, Allentown, Pennsylvania, for Plaintiff-Appellant.

David C. Gartenberg (Kelsey A. VanOverloop, with him on the brief), Littler Mendelson, P.C., Denver, Colorado, for Defendant-Appellee.

Karla Gilbride, General Counsel (Jennifer S. Goldstein, Associate General Counsel, Dara S. Smith, Assistant General Counsel, and Gail S. Coleman, Attorney, with her on the brief), Equal Employment Opportunity Commission, Washington, D.C., for Amicus Curiae.

_____

Before **MORITZ**, **MURPHY**, and **EID**, Circuit Judges.

_____

**EID**, Circuit Judge.

_____

Bethany Scheer contends that her former employer, Sisters of Charity of Leavenworth Health System, Inc. ("SCL"), unlawfully conditioned her employment on a willingness to participate in mental health counseling—a condition which she refused. After SCL terminated Scheer's employment, Scheer sued under the Americans with Disabilities Act Amendments Act and the Rehabilitation Act, alleging she had suffered discrimination based on a perceived disability with respect to the "terms, conditions, and privileges of [her] employment." 42 U.S.C. § 12112(a). The district court granted SCL summary judgment on the ground that the mandatory referral to counseling did not cause a "significant change" to Scheer's employment status, as our precedents required. App'x Vol. VI at 982 (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)).

The Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)—which was issued after the district court's order—compels reconsideration of this case. There, the Court rejected the significance test set forth in our precedents. *Id.* at 350, *abrogating Sanchez*, 164 F.3d at 532. It held instead that plaintiffs must show they suffered "*some harm* respecting an identifiable term or condition of employment" as a result of an employer's action. *Id.* at 355 (emphasis added). In light of this new test, we vacate the district court's grant of summary judgment and remand this case for the court to decide in the first instance whether

2

Scheer has suffered "some harm"—and not a "significant change," as our precedents previously required—as a result of SCL's actions.

## I.

From 2014 to 2019, SCL employed Bethany Scheer as a representative in its Physician Billing Department.  Although Scheer's official title at SCL changed throughout her employment, her responsibilities remained essentially the same:  She researched and appealed outstanding medical claims, contacted insurance companies, and took on special projects from her supervisors.

Scheer's job performance at SCL was inconsistent.  Within the first four years of her employment, SCL issued Scheer seven corrective actions—all based on her failure to hit productivity targets.  During the same period, SCL also counseled Scheer for professional and behavioral issues.  Eventually, Scheer's supervisors recommended placing her on a performance improvement plan ("PIP") aimed at increasing her consistency at work.  Scheer's immediate supervisor (Kathy Orsborn) sent a draft of the PIP to SCL's human resources director (Karen Oxenford) on August 23, 2019.

On August 22, 2019—one day before Orsborn drafted the PIP—Scheer expressed to a coworker (Angela Diaz), a supervisor (Lani Rasmussen), and her department manager (Danielle Stowell) that she was struggling with personal issues. All three subsequently reported concerns for Scheer's mental well-being and safety. Stowell emailed Oxenford with a "summary of the talks of suicide," App'x Vol. II at 265, and Oxenford adjusted the PIP to include a second component addressing

Scheer's behavioral concerns. The revised PIP imposed an "action plan" consisting of a mandatory referral to SCL's employee assistance program ("EAP") for counseling.[1] *Id.* at 210.

On August 28, 2019, Stowell, Orsborn, and Oxenford presented the revised PIP to Scheer. They first addressed concerns with Scheer's productivity, which Scheer disputed. Scheer protested that she did not need a PIP because she had met the minimum standards for the past five months leading up to the meeting. After Scheer's supervisors insisted the PIP was necessary, Scheer became upset and left the room. Ten or fifteen minutes later, Scheer returned to the meeting and said she would try the PIP.

The supervisors then turned the conversation to Scheer's behavioral concerns. They explained that, as part of the PIP, "visiting with the EAP was a condition of [Scheer's] continued employment." App'x Vol. I at 66. Scheer stated that she was not opposed to seeing a counselor, but that she did not want anyone to have access to her medical records. After Oxenford explained that a third-party provider (New Directions) would administer the EAP and that no one at SCL would have access to Scheer's records, Scheer agreed to the terms of the PIP and signed it.

---

[1] An EAP is a free program offering "telephonic counseling and referrals for everyday challenges, in-person counseling with behavioral health professionals, [and] financial and legal support services." App'x Vol. II at 231. At the time this dispute arose, SCL's EAP was facilitated by a third party called New Directions.

Later that day, Oxenford presented Scheer with New Directions's EAP Formal Referral Form. The Form would authorize New Directions to disclose to SCL whether Scheer (1) attended counseling sessions and (2) complied with the EAP's recommendations. Oxenford explained that the Form was a term of Scheer's employment, and that if she did not sign it, her employment would be terminated. After consulting an attorney, Scheer refused to sign the form and was subsequently fired.

Scheer sued under the Americans with Disabilities Act Amendments Act and the Rehabilitation Act, alleging SCL had fired her "based upon its erroneous perception that she suffers from a disability of mental illness." *Id.* at 6. The district court granted SCL summary judgment. It concluded the mandatory referral to counseling was not an adverse employment action because it did not cause a "significant change" to Scheer's employment status. App'x Vol. VI at 982 (citing *Sanchez*, 164 F.3d at 532). And because the court found the mandatory referral was not an adverse employment action, it concluded SCL terminated Scheer's employment because Scheer refused to fulfill a condition of her PIP, and not because of a perceived disability.

Scheer timely appealed, and the Equal Employment Opportunity Commission filed an amicus brief in her support.

## II.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). To obtain relief under the ADA, a plaintiff must prove she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential job functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."[2] *E.E.O.C. v. C.R. Eng., Inc.*, 644 F.3d 1029, 1038 (10th Cir. 2011) (quotation omitted).

The third element of a discrimination claim requires ADA plaintiffs to show they have suffered an "adverse employment action because of [a] disability." *Id.* (quotation omitted). We have previously defined "adverse employment actions" as those that "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Sanchez*, 164 F.3d at 532 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003).

In evaluating Scheer's claims, the district court applied that standard: It concluded Scheer had not shown that SCL's actions caused a "significant change" to her employment status because (1) Scheer had not identified any case law directly supporting her claim that a mandatory EAP referral is an adverse employment action, (2) SCL had no meaningful control over Scheer's treatment plan, and (3) Scheer

---

[2] Scheer brought claims under both the ADA and the Rehabilitation Act. Unless the ADA states otherwise, we analyze these claims under the same standards. *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020).

6

independently sought counseling during her suspension.  App'x Vol. VI at 984 (citing

*Sanchez*, 164 F.3d at 532).  "Given the[se] 'unique factors,'" the court held Scheer's

claims failed as a matter of law.  *Id.* (quoting *Sanchez*, 164 F.3d at 532).

But soon after the district court issued its order, the Supreme Court

unambiguously "change[d] the legal standard used in any circuit that has previously

required 'significant,' 'material,' or 'serious' injury."  *Muldrow*, 601 U.S. at 356 n.2.

It held instead that an employment action is adverse if a plaintiff can demonstrate

that she experienced "*some harm* respecting an identifiable term or condition of

employment" as a result of that action.  *Id.* at 355 (emphasis added).  This means an

employer's action "must have left [the plaintiff] worse off, but *need not have left her

significantly so*."[3]  *Id.* at 359 (emphasis added).

The district court dutifully followed Circuit precedent.  But at the time the

court issued its order, it did not have the benefit of the Supreme Court's instruction in

*Muldrow*.  And while it is possible Scheer did not satisfy our higher, pre-*Muldrow*

---

[3] Though *Muldrow* arose under Title VII of the Civil Rights Act of 1964, its holding applies in full force here.  *See Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 814 (10th Cir. 2020) (en banc) (noting that Title VII "provide[s] us with a broad conception of the scope of the language 'terms, conditions, and privileges of employment'"); *id.* ("[W]e discern nothing in the text of [our Title VII] decisions or otherwise that suggests their reasoning does not readily apply to nearly identical language in the ADA.").  Today, we join our sister circuits in holding more specifically that *Muldrow*'s some-harm standard applies not only to Title VII claims, but also to ADA claims.  *See, e.g.*, *Rios v. Centerra Grp., LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024) (ADA claims); *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 n.4 (5th Cir. 2024) (ADEA claims); *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (ADEA claims); *Davis v. Orange Cnty.*, No. 23-12759, 2024 WL 3507722, at *3–4 (11th Cir. July 23, 2024) (ADA claims).

standard, she no longer needs to. Accordingly, we hold the district court must now reevaluate Scheer's claims under the test set forth in *Muldrow*. We leave to the court's discretion whether to allow supplemental submissions from the parties to address any additional implications of that case.

### III.

We VACATE the district court's grant of summary judgment and REMAND this case for further proceedings consistent with this opinion.