Melvin TIPTON, Plaintiff,

v.

CITY OF HUTCHINSON, KANSAS, Defendant.

No. 97–1448–WEB.

United States District Court, D. Kansas.

Aug. 27, 1999.

Jim Lawing, Wichita, KS, for Melvin Tipton and William Perrone.

M. Kathryn Webb, Robert G. Martin, II, Dustin L. DeVaughn, David L. Vogel, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, for City of Hutchinson.

**Memorandum and Order**

WESLEY E. BROWN, Senior District Judge.

Plaintiff is a former employee of the City of Hutchinson Fire Department. He alleges that the City engaged in unlawful employment discrimination against him on account of his age and forced him to retire from the Department. The matter is now before the court on the defendant's motion for summary judgment. The court finds that oral argument would not assist in deciding the issues presented.

I. *Uncontroverted Facts.*

1. Plaintiff started work for the City of Hutchinson Fire Department in November 1971.

2. On or about May 28, 1996, plaintiff was admitted to Hutchinson Hospital with "tight wheezing respirations and respiratory insufficiency." Dr. Robert W. Stafford discharged plaintiff with the following diagnoses: 1) Asthmatic bronchitis; 2) respiratory insufficiency; 3) cigarette addiction; and 4) hypercholesterolemia. Plaintiff had first developed pulmonary problems after serving in the armed forces in Desert Storm.

3. On or about November 8, 1996, plaintiff retired from employment with the Fire Department. At the same time he applied for disability retirement with the Kansas Public Employees Retirement System.

4. For the last several years prior to his retirement plaintiff held the position of Fire Prevention Inspector.

5. Plaintiff's job description included a list of "Essential Functions" and "Marginal Functions." Two of the marginal functions required of plaintiff's position were: "Performs firefighting activities," and "Responds and provides emergency medical treatment." During the time that plaintiff was a Fire Prevention Inspector, he engaged in fighting fires on only two occasions.

6. Under "Physical Requirements" for plaintiff's position, the job description specifies that the employee must be in excellent physical condition.

7. On November 8, 1996, plaintiff applied for disability retirement with the Kansas Public Employees Retirement System ("KPERS") claiming that he was unable to fulfill the duties of his job classification.

8. The Application for Disability completed by plaintiff contains a "Notice" to advise the applicant that "DISABILITY is defined by K.S.A. § 74–4952(2) as 'the total inability to perform permanently the duties of the position of a policeman or fireman.'" The form further sets forth the definition of a Service–Connected Disability pursuant to K.S.A. § 74–4952(12) as "any physical or mental disability resulting from external force, violence or disease occasioned by an act of duty as a policeman or fireman, and shall include ... any disability resulting from a heart disease or disease of the lung or respiratory tract." Plaintiff checked the box noting that he sought Service–Connected Disability Retirement.

9. Plaintiff noted on the application that he became "totally disabled" in September 1996 "when duties of job changed to include fire fighting activities." Plaintiff also stated that he "failed to meet fire department hearing standards."

10. Plaintiff described the nature of his disability as follows: "I have a moderate obstructive lung defect which precludes me from fire fighting activities. I have a significant hearing loss and have failed to meet fire fighting requirements."

11. The same day that plaintiff submitted his Application for Disability, he also submitted an Employee Report of Accident to the Hutchinson Fire Department stating that he had sustained the following injuries: "Ears, lungs, moderate obstructive lung defect, significant hearing loss. Both of which cause me to fail firefighting standards."

12. On November 13, 1996, five days following the submission of his application for disability retirement, plaintiff visited his physician, Dr. Robert W. Stafford, with continuing problems of chronic obstructive pulmonary disease and asthma. The doctor noted, "Melvin is considering applying for retirement. He feels with his present respiratory problems he is no longer able to meet the physical demands of exertions required of his firefighting job. I tend to agree."

13. Plaintiff applied for and received paid sick leave to exhaust his accumulated sick leave time for the three month period from November 11, 1996, to February 12, 1997.

14. On March 24, 1997, Dr. Benson M. Powell II completed a review of materials submitted in connection with plaintiff's Application for Disability and determined the following: "On the basis of the above information, it is my medical opinion that Melvin Everett Leroy Tipton, Jr. is disabled for duty as a fireman due to chronic obstructive pulmonary disease, and hence, service-connected. Date of disability is 11/08/96."

15. On or about April 8, 1997, Meredith Williams, Executive Secretary of the Kansas Public Employees Retirement System, approved plaintiff's application and found that plaintiff qualified for retirement benefits for disability due to service-connected causes under the provisions of K.S.A. § 74–4960(1).

16. Plaintiff immediately received notice of the approval of his disability retirement.

17. On September 3, 1996, Mr. Gary Frazier took over the position of Fire Chief of the City of Hutchinson Fire Department.

18. In September 1996, Fire Chief Frazier and other members of the Fire Department conducted a "change conference" or "vision meeting" that was attended by all staff members of the department including Melvin Tipton. The purpose of the conference generally was to discuss the status and responsibilities of various divi-

sions within the department and the direction that the department would be taking in the future. They were looking at various options to improve the department and to discuss changes that would occur.

19. When Fire Chief Frazier assumed the position of Fire Chief he had numerous conversations with Kim Forbes, Deputy Fire Chief, who had previously held the position of Fire Chief. Interim Chief Forbes had been and continued to be Melvin Tipton's immediate supervisor after Frazier's appointment to the Chief's position. They discussed at length the Inspection Division and the role of each individual assigned to that Division.

20. By the fall of 1996 there were only three Fire Prevention Inspectors. Previously there had been four. Fire Chief Frazier expected all Inspectors to be prepared to perform all functions identified on their job descriptions.

21. Deputy Chief Forbes advised Mr. Tipton that, due to the shortage of personnel in the Inspection Division and the need to re-allocate staff resources, he would be expected to assist other Inspectors with the current load of building inspections and public education programs. Forbes had also told plaintiff this in early 1996, before Chief Frazier was hired.

22. Deputy Chief Forbes also advised Mr. Tipton that in the future he would be required to complete a daily activity sheet to document his daily work activities. The daily activity sheet would be required of all personnel in Operations and Inspections Divisions as well as from the Maintenance Mechanic. Deputy Chief Forbes and Fire Chief Frazier believed it was necessary to track, monitor and direct all training and work activities in these areas.

23. Although Mr. Tipton had been concentrating his work efforts in the investigation of fires, he held the position of Fire Prevention Inspector. The job description for that position, which had been updated in 1995 prior to Fire Chief Frazier's tenure with the Department, included the essential functions of inspections, counseling juveniles, code enforcement, investigative work, reporting and record keeping, and other related activities. The job description for that position also required certain marginal functions such as firefighting, liaison to private contractors, complaint investigations, and scheduling educational programs. Chief Frazier expected the Fire Prevention Inspector to be able to perform all functions identified in the job description, including those identified as marginal.

24. Fire Chief Frazier learned from his conversations with Deputy Chief Forbes that it had been the practice of the Hutchinson Fire Department to use Fire Prevention Inspectors as needed during large structural fires. On occasion, the additional manpower was needed to protect the health and safety of the public when a large structural fire broke out. Plaintiff had been required to perform firefighting duties on two occasions. On other rare occasions, he had also been called on to assist firefighters by fetching air packs and getting meals.

25. Although Fire Chief Frazier denies making any comments to Mr. Tipton regarding his age or suggesting that he should retire, plaintiff asserts in his affidavit that in October Frazier told him that plaintiff "had been in the department 'too long' and was 'too old,' [and that he] 'need[s] to get the hell out.'" Pl.Aff. ¶ 8.

26. Fire Chief Frazier is unaware of any discussion between Mr. Tipton and any staff personnel prior to this lawsuit regarding the issue of plaintiff's age.

27. Mr. Tipton never complained to Fire Chief Frazier or informed him in any manner of any comments or actions on the part of Fire Chief Frazier or the part of any department employees that Tipton regarded as evidence of age discrimination.

28. Mr. Tipton resigned his position with the Department effective November 8, 1996. He had been absent from work on sick leave for much of September and October 1996 due to medical problems.

29. Following Mr. Tipton's retirement and pursuant to a department-wide reorganization, the Inspection Division was reduced to two positions consisting of Inspector Coordinator and Inspector. Previously the Inspections Division had been composed of three positions all titled "Fire Prevention Inspector."

30. Following Mr. Tipton's retirement, Chief Frazier did not hire a replacement for that position due to department reorganization.

31. On November 6, 1996, Chief Frazier sent a memorandum to the City Manager concerning the proposed reorganization of his department.

32. Plaintiff suffers from respiratory problems that prevent him from performing actual firefighting duties.

33. Plaintiff understood that he was required to have skill and training to be able to perform the marginal functions of the position he held, including that of firefighting.

34. Plaintiff admits that he is unable to perform firefighting activities.

35. Plaintiff's last day of work with the Fire Department was November 8, 1996. That same day he applied for disability retirement.

36. On November 11, 1996, plaintiff told his doctor that he felt he could no longer perform his job at the Fire Department. The doctor agreed with the assessment due to the seriousness of plaintiff's respiratory problems.

37. No one with the Fire Department asked plaintiff to resign his position.

38. Plaintiff made no complaints to anyone about the alleged age discrimination problem prior to submitting his resignation.

39. The City of Hutchinson has a policy against discrimination based on age.

## II. *Arguments.*

The City contends it is entitled to summary judgment for several reasons. It argues that plaintiff did not suffer any adverse employment action, that he was not qualified for the position of Fire Inspector, and that he was not treated less favorably than persons under age 40. Even if plaintiff could produce evidence to satisfy these elements of a prima facie claim, the City argues, his claim would still fail because plaintiff's voluntary retirement provides a legitimate, non-discriminatory reason for the City's actions, and plaintiff has no evidence that this reason was a pretext for discrimination.

In response, plaintiff first argues that "a supervisor's belittlement of one's work, without specific identification of performance problems, is an adverse employment action." Second, plaintiff contends he was qualified for the position as evidenced by the fact that he performed the job for several years. Next, he asserts that he was treated less favorably than persons under 40.[1] Lastly, plaintiff contends that Chief Frazier's comments about plaintiff being "too old" and the lack of evidence that plaintiff's work performance was deficient show that the reason offered by the City for its action was a pretext for discrimination.

## III. *Standard for Summary Judgment.*

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule suggests by its plain language that "the mere existence of some alleged factual dispute between

---

1. In support of this contention, plaintiff cites only his own deposition testimony, in which he asserted that his position was subsequently offered to David Bryant, whom plaintiff identified as an individual under age 40 who had a pacemaker. The court agrees with the City that this testimony appears to be hearsay, inasmuch as plaintiff fails to show that such assertions are based on personal knowledge.

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The determination of which facts are material depends on the substantive law of the case (i.e., the elements of the claim asserted). *See Id.* at 248, 106 S.Ct. 2505. A genuine issue of material fact exists when a jury of reasonable people could find for the party opposing the motion. *See Id. See also Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir.1998).

When evaluating the record, the court views the evidence in the light most favorable to the nonmoving party. The moving party bears the initial burden of showing that there is an absence of any issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the nonmoving party may not rest upon his pleadings, but must come forward with specific facts showing there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adler v. Wal–Mart*, 144 F.3d at 670–71. Mere conclusory statements are inadequate to defeat a summary judgment motion. *See Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir.1990).

### IV. *Discussion.*

Under the Age Discrimination in Employment Act (ADEA), an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff relies upon circumstantial evidence to show unlawful discrimination, the court uses the "burden-shifting" approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), under which the plaintiff bears the initial burden of

setting forth a prima facie case of discrimination. To meet that burden, the plaintiff must show that: 1) he is a member of the class protected by the statute; 2) he suffered an adverse employment action; 3) he was qualified for the position at issue; and 4) he was treated less favorably than others not in the protected class. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 531 (10th Cir.1998). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. *Id.* If the defendant does so, the plaintiff must show that the defendant's proffered reasons are pretextual. *Id.*

 Plaintiff has failed to cite evidence to support a prima facie case of discrimination. As an initial matter, there is no evidence that the City took any adverse employment action against him. Plaintiff contends that "the belittlement of one's work" qualifies, but criticism of an employee's work, standing alone, is not an adverse employment action. *See Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir.1999); *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir.1999). Nor did the City discharge the plaintiff; the undisputed facts show that plaintiff retired from his position. Plaintiff asserts that Chief Frazier "forc[ed] him to resign from service because he was considered 'old' by the chief." Pl.Resp. at 1. But the comments that were allegedly made by the Chief are not sufficient to show that plaintiff was forced to retire. To prove "constructive discharge," a plaintiff must allege sufficient facts to demonstrate " 'the employer by its illegal discriminatory acts has made working condition so difficult that a reasonable person in the employee's position would feel compelled to resign.' " *Sanchez*, 164 F.3d at 534 (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986)). While comments of the type alleged might be offensive to a reasonable person, they are not the type of "unreasonably harsh conditions, in excess of those faced by coworkers" that would compel a

reasonable person to resign. *See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir.1990).[2]

■ Nor has plaintiff shown that he was qualified for the position of Fire Prevention Inspector. There is no dispute that firefighting was a required function for this position, and that plaintiff was no longer physically capable of performing firefighting duties. Although firefighting was considered a marginal function and was only required on rare occasions, given the importance of this function to public safety the court cannot say it was an irrelevant or insignificant requirement.

As for the third element of a prima facie case, the only evidence cited to show that plaintiff was treated less favorably than persons under age 40 is his own affidavit stating that after he resigned, his position was offered to (but apparently not accepted by) a person under 40 with a pacemaker whom plaintiff describes as "another disabled fire fighter." Pl.Resp. at 6.[3] As an initial matter, plaintiff does not show that he has personal knowledge of these assertions. Nor does he address the testimony of Chief Frazier asserting that plaintiff's position was eliminated after his retirement. Plaintiff offers no evidence that the subsequent decision to eliminate this position was somehow related to plaintiff's age. Under the circumstances, plaintiff fails to show a genuine issue of fact exists as to this element.[4]

■ In addition to the burden-shifting approach outlined above, a plaintiff may also prevail on a claim of discrimination by direct proof that the employer's adverse job actions resulted from an unlawful motive. In this case, plaintiff claims that Fire Chief Frazier made comments reflecting such a motive, including that plaintiff was "too old" and "need[s] to get the hell out." Such comments do not create a genuine issue of fact for trial, however, because plaintiff has no evidence that Frazier actually took any adverse employment action against him or that there was any causal connection between Frazier's comments and such a decision. *Cf. Cone v. Longmont United Hospital Ass'n.*, 14 F.3d 526, 531 (10th Cir.1994) (plaintiff must show a nexus between age-related comments and the adverse employment action).

In sum, plaintiff has failed to cite evidence to support the elements of a claim of age discrimination. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### V. *Conclusion.*

The defendant's Motion for Summary Judgment (Doc. 33) is hereby GRANTED. The clerk is directed to enter a judgment of dismissal in favor of the defendant City

---

2. Although plaintiff does not specifically argue the point, the court notes that Chief Frazier's insistence that plaintiff be able to perform the functions listed for his position is not evidence of a discriminatory adverse job action, as is shown by the fact that such a function was listed for the position prior to Chief Frazier's arrival, and plaintiff had in fact been called upon to perform this function in the past. Moreover, there is no evidence that Chief Frazier treated plaintiff differently in this respect than younger workers.

3. The court assumes that plaintiff's reference to the "Americans With Disabilities Act" on page 1 of his response was a typographical error. The only claim asserted by plaintiff is an alleged violation of the Age Discrimination in Employment Act.

4. In view of the above rulings, the court need not address the City's contention that plaintiff failed to cite any evidence showing the City's proffered reasons for its actions were pretextual.

of Hutchinson and against the plaintiff Melvin Tipton. IT IS SO ORDERED.