Irene **FLORES**, Plaintiff,

v.

**J.C. PENNEY COMPANY, INC.,** Defendant.

**Civil Action No. 01–2024–GTV.**

United States District Court, D. Kansas.

March 8, 2002.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, for Plaintiff.

Jack D. Rowe, Lathrop & Gage L.C., Kathleen M. Nemechek, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Shaw, LLP, Kansas City, MO, Nicholas A. O'Kelly, Plano, TX, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff, Irene Flores, brings this case alleging that Defendant, J.C. Penney Company, Inc. ("J.C.Penney"), discriminated against, harassed and constructively discharged her based on her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Kansas Act Against Discrimination, K.S.A. § 44–1001 et seq. ("KAAD"). The case is before the court on Defendant's motion for summary judgment (Doc. 21). For the reasons set forth below, Defendant's motion is granted.

## I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in the light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff, a Hispanic female, was hired by Defendant as a merchandise manager trainee in August 1997. Defendant initially assigned Plaintiff to the J.C. Penney store located in North Platte, Nebraska, where Plaintiff was to complete a twenty-three week merchandising training course supervised by Robin Hutchinson, a merchandise manager. Ms. Hutchinson recorded Plaintiff's progress as a trainee in 30–day, 90–day, and 150–day performance evaluations. The evaluations indicated that, for the most part, Plaintiff's performance was either "good" or "satisfactory." Despite the generally favorable evaluations, Plaintiff testified in deposition that she believed her training at the North Platte store to be inadequate because neither Ms. Hutchinson nor the other managers at the store trained her on Defendant's new computer systems.

In January 1998, Defendant converted its North Platte store into a procurement store. As a result of the conversion, North Platte store employees no longer performed merchandising functions, and the need for Plaintiff's position as a merchandiser was negated. Given the change in store status, Plaintiff assumed various assistant manager duties and remained in that capacity at the North Platte store for approximately seven months.

In approximately October 1998, Dennis Bostow, the manager of the North Platte store, arranged for Plaintiff to receive additional merchandising training at Defendant's Denver, Colorado office. As she had previously done at the North Platte store, Plaintiff trained in Denver as a merchandise manager trainee for approximately three to four months. Plaintiff received no performance evaluations during her time in Denver, and she testified in deposition that by the time she finished her stint in Denver, she felt that Defendant had provided her with inadequate training and was setting her up to fail.

In January 1999, Defendant assigned Plaintiff to the J.C. Penney store located in Salina, Kansas, where her supervisor was Store Manager, Cathy Brown. When Plaintiff first reported to the Salina store, Ms. Brown assigned Plaintiff to the Children's Department. Plaintiff's responsibilities as the Children's Department merchandiser were to run the department, including hiring employees, training employees and managing inventory.

Plaintiff testified in deposition that during her tenure at the Salina store, Ms. Brown discriminated against and harassed her because of her race and national origin in a variety of ways. Plaintiff alleges that the discriminatory treatment is evidenced by Ms. Brown: (1) classifying Plaintiff as a merchandise manager trainee, as opposed to a merchandise manager, until February

1999; (2) forcing Plaintiff to work more hours, weekends and special events than non-Hispanic employees; (3) requiring Plaintiff to use vacation time to tend to family matters when non-Hispanic employees were not required to do so; (4) threatening to terminate Plaintiff's employment on several occasions; (5) requiring Plaintiff to spend more time on the "floor" to cover staffing needs than non-Hispanic employees; and (6) overseeing Plaintiff's scheduling and use of lower level associates when non-Hispanic employees were not subject to such oversight.

In addition, Plaintiff testified in deposition that Ms. Brown: (1) told her during her first week of work that "[t]his was going to be the worst year of her life" and that Ms. Brown "got stuck with her;" (2) once asked her if she had ever read before, a question that Plaintiff inferred meant that Ms. Brown thought she was uneducated and unaware of the English language; (3) publicly chastised her for mistakes; (4) told her that she spoke too fast and did not use proper grammar; (5) asked her during a meeting if she "was stupid;" and (6) twice raised the issue of the existence racism in Salina to Plaintiff.[1]

Plaintiff received three performance evaluations during her tenure at the Salina store. Defendant's performance evaluations ranked employees on a scale of one to six, with one being the highest rating, five being the lowest rating, and six indicating that the employee was "too new to rate."

In April 1999, Ms. Brown gave Plaintiff an overall performance rating of six. Despite the overall "too new to rate" rating, Ms. Brown gave Plaintiff a "Needs Development" rating in five specific areas, a "Good" rating in one area, and a "Satisfactory" rating in three areas. In addition,

Ms. Brown noted the following in the Comments section of Plaintiff's evaluation:

Irene is fresh off the training program and is lacking in many areas of development. She needs to develop a strong desire to learn and to continue developing the skills she needs to manage and merchandise a department. Irene needs to take responsibility for her career immediately and continuous improvement must be demonstrated. Failure to achieve these goals could result in termination.

In September 1999, Ms. Brown evaluated Plaintiff again, this time giving her an overall performance rating of three. Ms. Brown gave Plaintiff the same "Needs Development," "Good," and "Satisfactory" ratings in specific work areas as she did in Plaintiff's April 1999 review. Ms. Brown noted the following in the Comments section of Plaintiff's September evaluation:

Irene's performance through 1st half has not been satisfactory. Attached is a list of accomplishments that must be achieved in time frame designated. Irene must develop the leadership and merchandising skills to accomplish her job. She has been in position a sufficient time and must raise every level of her business. 3 rating at this time, but to be re-evaluated in 60 days. If progress not made at this time, she will be re-rated.

The list of accomplishments referenced by Ms. Brown focused primarily on preparation and timeliness issues. Plaintiff testified in deposition that she agreed with her September 1999 performance evaluation and that nothing about the evaluation suggested that she was being discriminated against because of her race or national origin.

---

1. Plaintiff testified that Ms. Brown asked Plaintiff on two occasions if she had been subject to any racism in Salina. On both occasions, Plaintiff responded that she had not.

On March 13, 2000, Ms. Brown downgraded Plaintiff's overall performance rating to a four and gave her a "Needs Development" rating in six specific areas and a "Satisfactory" rating in three areas. In the Comments section, Ms. Brown noted:

> I[r]ene has been in position 1 year and is still lacking in many areas of development. In Sept., she was given a list of accomplishments that needed to be achieved to secure a satisfactory rating. These were not achieved. Irene must develop the necessary merchandising skills and leadership to accomplish her job. Some improvement has been demonstrated but not consistently. New goals will be established according to Regional Guidelines and Irene will have 90 days to achieve these goals to earn back her 3 rating.

Plaintiff admitted in deposition that she failed to satisfy all of the goals outlined for her by Ms. Brown in September 1999.

On March 14, 2000, Plaintiff resigned from J.C. Penney. In her Notice of Resignation, Plaintiff listed the following reasons for her resignation: "I feel that Mrs. Cathy Brown gave me an unfair appraisal that was unjustified. Also I feel that it was done to avoid giving me a raise." Plaintiff's final day working for Defendant was March 24, 2000. Plaintiff received three salary increases while employed at Defendant's Salina store, two of which were across-the-board increases and one of which was at the manager's request shortly after Plaintiff's transfer from Denver.

Defendant has a written policy in its Associate Handbook prohibiting harassment on the basis of, among other things, race or ethnic origin. The policy directs employees who feel that they have been harassed to contact the store manager or, if that would be ineffective, the district, regional or home office to inform an appropriate official of the harassment. In addition, Defendant also hangs anti-discrimination and anti-harassment posters at their stores, including the Salina store, which contain the names and telephone numbers of management personnel to whom employees may report any concerns regarding perceived discrimination or harassment. Plaintiff admitted in deposition that she had read Defendant's Associate Handbook and knew of the anti-discrimination and anti-harassment posters hanging in the stores, but that she did not report any complaints of harassment or discrimination to management during her employment at Defendant's Salina store.[2]

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

---

**2.** Plaintiff testified in deposition that she attempted to contact two individuals at some point during the course of her employment with J.C. Penney to complain about Ms. Brown, but was unsuccessful. Plaintiff also testified that she did not contact the district manager about Ms. Brown because she believed that Ms. Brown had already made her views about Plaintiff known to the district manager.

matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## III. DISCUSSION

### A. Disparate Treatment Claim

Title VII and the KAAD prohibit an employer from discriminating against an employee on the basis of, among other things, the employee's race or national origin. *See* 42 U.S.C. § 2000e–2(a); K.S.A. § 44–1009(a)(1). Where, as here, there is no direct evidence of discrimination, the court applies the three-step, burden-shifting analysis set forth by the *United States Supreme Court in McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] Under the McDonnell Douglas analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to offer evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves. v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To establish a prima facie case of discrimination in the terms and conditions of employment, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered adverse employment action; and (3) she was treated less favorably than similarly situated employees that were not in the protected class. *See Trujillo v. Univ. of Colo. Health Sciences Ctr.,* 157

---

**3.** The court applies the same allocation, burden and order of proof to Plaintiff's Title VII and KAAD claims. *See Aramburu v. Boeing*

*Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir.1997) (citation omitted).

F.3d 1211, 1215 (10th Cir.1998) (citation omitted). Rather than mounting a full-frontal assault on Plaintiff's prima facie case, Defendant in this case focuses primarily on Plaintiff's lack of evidence of pretext.[4] For that reason, the court assumes for purposes of this opinion that Plaintiff has established a prima facie case and proceeds directly to the final two steps of the McDonnell Douglas analysis.[5]

■ Assuming that Plaintiff has established a prima facie case of discrimination, the burden shifts to Defendant to articulate legitimate, non-discriminatory reasons for the adverse employment actions taken against Plaintiff. Defendant explains that any adverse employment action suffered by Plaintiff was merely the result of Plaintiff's poor performance or her misunderstanding of store policies. Because Defendant need only explain its actions against Plaintiff "in terms that are not facially prohibited by Title VII," the court concludes that Defendant has met its burden. *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir.1992) (citations omitted).

■ The court next evaluates whether Plaintiff has satisfied her ultimate burden of demonstrating a genuine issue of material fact as to whether Defendant's proffered reasons are pretextual. Plaintiff argues that pretext is shown by virtue of the fact that she received three salary increases while employed at Defendant's Salina store and that she met many of the goals established by Ms. Brown in September 1999, yet she was still given an overall performance rating of four in March 2000. Plaintiff maintains that the salary increases and the attainment of some of the September 1999 goals demonstrate that Defendant's reasons for giving her a four rating in March 2000 are false. The court disagrees.

First, the undisputed facts demonstrate that two of Plaintiff's salary increases at the Salina store, including the one that was given between Plaintiff's September 1999 and March 2000 performance evaluations, were across-the-board increases given to all employees. Plaintiff received the remaining salary increase shortly after she arrived at the Salina store-well before the March 2000 evaluation at issue. The salary increases do not demonstrate that Plaintiff's performance was better than the

---

4. In its summary judgment briefing, Defendant states in passing that Plaintiff has no evidence that she was treated differently than other employees, however, Defendant fails to elaborate on the issue any further than its fleeting reference.

5. Although the court proceeds directly to the final two steps of the McDonnell Douglas analysis in light of Defendant's failure to fully brief the issue, it notes its skepticism at Plaintiff's ability to establish a prima facie case. As an initial matter, many of the alleged adverse employment actions suffered by plaintiff are questionable. An adverse employment action does not include " 'a mere inconvenience or an alteration of job responsibilities,' " nor is an action adverse simply because an employee dislikes or disagrees with it. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir.1998) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132,

136 (7th Cir.1993)) (further citation omitted). In this case, the court doubts that many of the actions of which Plaintiff complains would rise to the level of adverse under Tenth Circuit precedent. In addition, Plaintiff's evidence that she was treated less favorably than similarly situated non-minority employees is weak. For instance, the court finds no evidence that Plaintiff's training in North Platte and Denver—which she claims was insufficient and discriminatory—differed in any respect from training given to non-minority merchandise manager trainees. Moreover, Plaintiff's evidence of differential treatment at the Salina store consists primarily of her own conclusory deposition testimony that non-Hispanic employees were treated more favorably than she. Rarely, if ever, does Plaintiff provide any specific details on how the often unnamed non-Hispanic employees were similarly situated or how in particular they were treated more favorably.

four rating that she received and, accordingly, do not create a genuine issue of material fact regarding pretext.

Second, while the record indicates that Plaintiff met some of the goals established by Ms. Brown in September 1999, Plaintiff admitted in deposition that she failed to satisfy all of the goals. Given that (1) Plaintiff testified in deposition that she agreed with her September 1999 evaluation, and (2) Ms. Brown specifically warned Plaintiff in the September 1999 evaluation that she needed to accomplish all of the goals to avoid being re-rated, the court concludes that Plaintiff's attainment of some of the goals prior to March 2000 fails to create a genuine issue of material fact regarding pretext.

The court notes that Plaintiff's pretext argument only addresses the final adverse employment action Plaintiff claims to have suffered—ie., the four rating on her March 2000 performance evaluation. The court concludes, however, that even if Plaintiff had addressed the remaining adverse employment actions, she would have failed to establish any genuine issues of material fact regarding the pretextual nature of Defendant's explanations for those actions. Most importantly, Plaintiff has produced no competent evidence in this case of any animus against her based on her race or national origin. In some instances, such as Plaintiff's allegation that Defendant discriminated against her at the North Platte store by providing her with inadequate training, Plaintiff actually admitted in deposition that she had no evidence that the alleged action was discriminatory. In all other instances, Plaintiff relied on either her own deposition testimony that she "believed" that Defendant was discriminating

against her on the basis of her race and national origin or on deposition testimony—much of it also her own—that some of her co-workers thought that she was being treated "unfairly" by Ms. Brown. With respect to Plaintiff's testimony that she "believed" that she was being discriminated against, " 'mere conjecture that her employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.' " *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir.1995) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988)). Accordingly, Plaintiff's own testimony fails to create a genuine issue of material fact regarding pretext in this case. As for Plaintiff's co-worker's alleged statements regarding "unfair" treatment, Plaintiff fails to offer any evidence that any of the co-workers believed that the alleged "unfair" treatment had any nexus to Plaintiff's race or national origin. Therefore, the alleged statements by Plaintiff's co-workers likewise fail to create a genuine issue of material fact regarding pretext.[6]

For these reasons, the court concludes that Plaintiff has failed to carry her burden of establishing a genuine issue of material fact about the pretextual nature of Defendant's proffered explanations for the adverse employment actions against Plaintiff. Accordingly, the court grants summary judgment to Defendant on Plaintiff's disparate treatment claim.

### B. Harassment Claim

To survive summary judgment on a hostile work environment harassment claim, a plaintiff must show "under the totality of the circumstances (1) the harassment was

---

**6.** Plaintiff also offered evidence of Ms. Brown's alleged "unfair" treatment of an African–American former employee of the Salina store named Lynn Thomas. Again, however, Plaintiff failed to offer any evidence that the allegedly unfair treatment was connected in any way to Mr. Thomas' race. Plaintiff merely testified that she "gathered" that Mr. Thomas felt discriminated against because of his race.

pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial [or national origin-oriented] or stemmed from racial [or national origin-oriented] animus." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994) (internal citation omitted). Harassment that is merely general and not based on a person's race or national origin is not actionable. See *id.* To be actionable, the plaintiff must offer evidence of " 'more than a few isolated incidents of racial [or national origin-oriented] enmity.' " *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir.1987) (quoting *Snell v. Suffolk Co.*, 782 F.2d 1094, 1103 (2d Cir. 1986)). Instead, the plaintiff must offer evidence of "a steady barrage of opprobrious racial [or national origin-oriented] comments." *Bolden*, 43 F.3d at 551 (citation omitted).

■ Plaintiff bases her harassment claim in this case on various statements made by and actions taken by Ms. Brown which Plaintiff believed to be based on her race and national origin. Specifically, Plaintiff points to her allegations that Ms. Brown: (1) told her during her first week of work that "[t]his was going to be the worst year of her life" and that Ms. Brown "got stuck with her;" (2) once asked her if she had ever read before, a question that Plaintiff inferred meant that Ms. Brown thought she was uneducated and unaware of the English language; (3) publicly chastised her for mistakes; (4) asked her during a meeting if she "was stupid;" (5) twice raised the issue of the existence racism in Salina to Plaintiff; (6) required her to work more hours, weekends and special events than non-Hispanic employees; and

(7) threatened to terminate Plaintiff's employment on several occasions.

The court concludes that Plaintiff's allegations regarding the allegedly hostile work environment created by Ms. Brown are insufficient to survive summary judgment. Plaintiff has not presented evidence that she was subjected to "a steady barrage of opprobrious" racial or national origin-oriented comments, as required to show a hostile work environment. In fact, Plaintiff offers no evidence whatsoever—other than her own subjective beliefs—that any of Ms. Brown's comments or actions were based on Plaintiff's race or national origin.[7] For that reason, the court grants summary judgment to Defendant on Plaintiff's hostile work environment harassment claim.

■ In addition, the court concludes that Defendant is also entitled to summary judgment on Plaintiff's hostile work environment harassment claim on the basis that Plaintiff failed to avail herself of Defendant's anti-harassment policies. In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court outlined the hostile work environment vicarious liability standard courts must apply when the alleged harasser, as here, is a supervisor. Specifically, the court held that so long as the supervisor's harassment did not result in "tangible employment action," the employer could avoid liability by proving that: (1) it had exercised reasonable care to prevent and promptly correct harassment; and (2)

7. The only evidence related in any manner to Plaintiff's race or national origin is Plaintiff's testimony that Ms. Brown twice raised the issue of the existence racism in Salina to Plaintiff. Interestingly, Plaintiff testified that when Ms. Brown raised the issue, Plaintiff responded on both occasions that she had not experienced any racism in Salina—a fact that would seem to weigh against Plaintiff's allegations of discrimination and harassment in this case.

the plaintiff unreasonably failed to take advantage of opportunities to prevent or avoid harm. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. An employment action is "tangible" if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257 (citations omitted).

██ In this case, the court does not find that any of the employment actions complained of by Plaintiff were tangible under the definition set forth in Ellerth and Faragher. Accordingly, the court may analyze the potential vicarious liability of Defendant for the actions of its supervisor, Ms. Brown, under the affirmative defense framework set forth in Ellerth and Faragher.

The undisputed facts in this case indicate that Defendant had a written employee handbook as well as posters hung in their stores, including the Salina store, that explained Defendant's anti-harassment and anti-discrimination policies and provided employees with the names of a variety of individuals to contact to report any concerns regarding perceived harassment or discrimination. Plaintiff testified in deposition that she had read Defendant's employee handbook and knew of Defendant's anti-discrimination and anti-harassment posters, but that she did not report any complaints of harassment or discrimination to management during her

employment at the Salina store. Given these facts, the court concludes that no genuine issue of material fact exists as to whether Defendant has satisfied both prongs of the Ellerth and Faragher affirmative defense. Plaintiff's failure to complain about the alleged harassment she received at the hands of Ms. Brown constitutes an unreasonable failure to take advantage of the opportunities that Defendant provided to prevent or avoid harm. See *Patterson v. SEK–CAP, Inc.,* 29 F.Supp.2d 1248, 1253 (D.Kan.1998).[8] Accordingly, the court grants summary judgment to Defendant on Plaintiff's hostile work environment harassment claim on that basis as well.

### C. Constructive Discharge Claim

"Constructive discharge occurs when 'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Sanchez,* 164 F.3d at 534 (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). "The conditions of employment must be objectively intolerable; the 'plaintiff's subjective views of the situation are irrelevant.'" *Id.* (quoting *Yearous v. Niobrara County Mem'l Hosp.,* 128 F.3d 1351, 1356 (10th Cir.1997)). In essence, a plaintiff must demonstrate that, objectively, she had "'no other choice but to quit.'" *Id.* (quoting *Yearous,* 128 F.3d at 1356 (quoting *Woodward v. City of Worland,* 977 F.2d 1392, 1401 (10th Cir.1992))).

Plaintiff bases her constructive discharge claim in this case on the same facts

---

**8.** Plaintiff testified in deposition that she attempted to contact two individuals at some point during the course of her employment with Defendant to complain about Ms. Brown, but was unsuccessful. However, Plaintiff's vague testimony regarding these attempts fails to raise a genuine issue of material fact sufficient to preclude summary judgment on this issue. Plaintiff also testified that she did not contact the district manager about

Ms. Brown because she believed that Ms. Brown had already made her views about Plaintiff known to him. This testimony is also insufficient to preclude summary judgment; an employee's fear that a complaint of harassment might not be taken seriously is generally not a valid excuse for failing to lodge a complaint. See, e.g., *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 295–96 (2d Cir.1999).

as her disparate treatment and hostile work environment harassment claims. Because the court has already concluded that summary judgment must be granted to Defendant on those claims, the court likewise concludes that Plaintiff has failed to offer evidence sufficient to sustain her constructive discharge claim. In short, Plaintiff has not demonstrated the existence of a genuine issue of material fact showing that, objectively, Plaintiff had no other choice but to resign from J.C. Penney in March 2000. Accordingly, the court grants summary judgment to Defendant on Plaintiff's constructive discharge claim.

### D. KAAD Claims

As a final note, Plaintiff argues that Defendant's motion for summary judgment fails to address Plaintiff's KAAD claims and that, therefore, those claims should remain in the case. The court disagrees. Defendant specifically requests in its motion that the court grant summary judgment and dismiss the action "in its entirety." Moreover, as noted by Plaintiff herself, the court applies identical analyses to Plaintiff's claims of disparate treatment, harassment and constructive discharge whether those claims are brought under Title VII or the KAAD. See, e.g., *Aramburu*, 112 F.3d at 1403 n. 3. Therefore, the court grants summary judgment to Defendant on Plaintiff's Title VII claims as well as her KAAD claims.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 21) is granted.

The case is closed.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**