**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 16 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONNA MITANI,

     Plaintiff - Appellant,

     v.

IHC HEALTH SERVICES, INC.,
d/b/a Utah Valley Regional Medical
Center,

     Defendant - Appellee.

No. 01-4190
(D.C. No. 2:00-CV-23-C)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

I. Background

Plaintiff-Appellant Donna Mitani filed this suit against her former

employer, Defendant-Appellee IHC Health Services, Inc., d/b/a Utah Valley

Regional Medical Center ("IHC"), in the United States District Court for the

District of Utah. Mitani alleged sex discrimination and retaliation under Title

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

VII, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). The district court granted summary judgment in favor of IHC on all claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

Mitani was employed in IHC's South Urban Region, as the manager of Environmental Services and Laundry/Linen. In the Spring of 1998, Chris Coons – the Chief Operating Officer of the South Urban IHC – decided to create a new Operations Officer position. The person hired to fill this position was to devise a "hotel model" of hospitality services at the center. In March 1998, Coons hired Marilyn Thorne for the position, and Thorne began creating the hotel-model hospitality program.

Later that year, in August 1998, Coons was at the American Fork public swimming pool with his children when Mitani arrived to swim with her three children. Mitani was wearing a bikini. Coons and Mitani did not speak to each other, and this offended Mitani. She believed that Coons found her choice of swimming apparel objectionable. Mitani had worn the same bikini to IHC swimming parties at Provo's Seven Peaks Water Park where male and female IHC employees wore various types of swimming apparel.

Approximately five days after the incident at the pool, Mitani alleges that Thorne approached her and said that she should not wear a bikini at a public pool. The next day, Mitani contacted the Utah Anti-Discrimination and Labor Division

("UALD") for information about how to file a discrimination claim against her employer. Mitani alleges that after the UALD inquiry, Thorne approached her again, this time to tell her that she should forget about their earlier conversation regarding Mitani's choice of swimwear.

Approximately six months later, in February 1999, Thorne created a new position – Regional Hospitality Manager – to facilitate the creation of a more hotel-like atmosphere in the hospital. The new position was designed to consolidate and upgrade all of the hospitality-related aspects of the hospital, thereby creating a more welcoming environment. The Regional Hospitality Manager would be responsible for the duties of Mitani's current position, as well as new responsibilities.

Thorne interviewed several candidates, including Mitani, and ultimately hired Gregory Parrott for the position. Parrott holds degrees in Culinary Arts and Hospitality Management, as well as a bachelors degree in Hotel Administration. He was employed for five years at the Mirage Hotel in Las Vegas and eighteen months at the Salt Lake City Courtyard Marriott.

Mitani does not hold a bachelors degree, one of the prerequisites set forth for the position of Regional Hospitality Manager. Mitani applied and interviewed for the new position, but she withdrew her application after the interview. Mitani alleges that Thorne told her after the interview that she would not be hired for the

new position.

Lane Pederson – an IHC Human Resources employee – encouraged Mitani to stay in her present position until Parrott arrived in May 1999. Mitani quit, however, on April 16, 1999. She filed a discrimination suit with UALD on July 26, 1999. The record contains no evidence that Mitani told Thorne or Coons prior to her departure that she had contacted UALD. There is evidence, however, that Mitani told other IHC employees – including Pederson – about her inquiry to UALD.

## II. Discussion

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We examine the factual record and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms*, 165 F.3d at 1326.

### B. Title VII Claims

-4-

Under Title VII, an employer may not discriminate against an employee with respect to the terms or privileges of employment *because of the employee's sex*. In analyzing sex discrimination and retaliation claims, we apply the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981) (sex discrimination); *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1263-64 (10th Cir. 1998) (retaliation).

Under this framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds in proving her prima facie case, the employer must come forth with a legitimate and facially nondiscriminatory reason for its employment decision. *Id.* Finally, if the employer satisfies this burden, the plaintiff must demonstrate that the defendant's proffered reasons were a pretext for discrimination. *Id.* at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253 (citations omitted).

When a case comes before us at the summary-judgment stage, the plaintiff survives the motion by "advanc[ing] evidence establishing a prima facie case and evidence upon which a factfinder could conclude that the defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual." *Ingels v.*

*Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir. 1994). We proceed to consider Mitani's sex discrimination and retaliation claims under this standard.

### 1. Sex Discrimination

#### a. Mitani's prima facie case

Under *McDonnell Douglas*, Mitani bears the initial burden of establishing a prima facie case of sex discrimination by a preponderance of the evidence. To satisfy this burden, Mitani must show that "(1) she is a member of the class protected by the statute; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998) (citations omitted).

Mitani has not met this burden. She has not offered sufficient evidence from which a jury could conclude that she suffered an adverse employment decision. Nor is there sufficient evidence for a jury to conclude that Mitani was qualified for the position at issue. Accordingly, we hold that the district court properly granted IHC's motion for summary judgment on Mitani's sex discrimination claim.

#### (1) Adverse employment action

"Although the Tenth Circuit liberally defines an 'adverse employment

action,' its existence is determined on a case by case basis and does not extend to 'a mere inconvenience or an alteration of job responsibilities.'" *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (quoting *Sanchez*, 164 F.3d at 532). An employer's "[r]etaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'" *Sanchez*, 164 F.3d at 533 (citations omitted).

Mitani suffered no adverse employment decision. First, IHC did not *actually* discharge Mitani. At the time Mitani chose to quit, she was working in the same job, for the same pay, with the same benefits. Mitani offers no evidence indicating that IHC would not have offered her another job at the same level of compensation after IHC hired Parrott for the new position of Regional Hospitality Manager. In fact, IHC told Mitani that there would likely be a position for her following the restructuring.

Second, IHC did not *constructively* terminate Mitani when IHC created the position of Regional Hospitality Manager. To support a constructive discharge claim under Title VII, a plaintiff must produce evidence sufficient to demonstrate that "'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would have

viewed her working condition as intolerable.'" *Sanchez*, 164 F.3d at 534. The standard is an objective one; thus, an employee's subjective feelings or beliefs are irrelevant. *Heno*, 208 F.3d at 858. "'If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have [suffered an adverse employment decision].'" *Id.* (citation omitted). In a constructive-discharge claim, "[e]ssentially, a plaintiff must show that she had '*no other choice* but to quit.'" *Sanchez*, 164 F.3d at 534 (citation and internal quotation marks omitted) (emphasis in original).

IHC told Mitani that she could remain in her position until Parrott started work and that there would likely be a position for her after the restructuring. But rather than wait and see whether a new job would be made available, Mitani chose to quit. Because there is no evidence that she suffered an adverse employment decision, Mitani cannot establish her prima facie case.

(2) Mitani's qualifications for the position of Regional Hospitality Manager

IHC eliminated Mitani's position and created a new position – Regional Hospitality Manager – in an effort to create a more "hotel-like" environment at the hospital. The job description for the new position required a bachelors degree. Mitani, by her own admission, did not have a bachelors degree.

The degree requirement was not the only difference between Mitani's position and the new position. IHC created the new position in an effort to

provide the hospital customers with a "more hotel-like" environment. Unlike Parrot – the person ultimately hired for the position – Mitani had no experience relevant to the performance of such duties. Parrott testified that he spends sixty percent of his time performing hospitality-related functions. This is consistent with IHC's shift in focus to a more "hotel-like" atmosphere at the hospital and indicates a substantial difference between Parrot's job duties under the new structure and Mitani's former job duties.

Despite this shift in focus, Mitani claims that her previous experience with IHC qualified her for the new position. An employee's opinions about her own qualifications, however, do not give rise to a material factual dispute. *See Burlington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999). Even if we conclude that IHC misjudged Mitani's qualifications, such evidence would not preclude summary judgment. *See id.* "The relevant inquiry is not whether [IHC's] proffered reasons were wise, fair or correct, but whether [IHC] honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (citation omitted).

In sum, Mitani failed to demonstrate that she was qualified for the new position of Regional Hospitality Manager. She likewise failed to show that IHC acted in bad faith in creating the new position. Thus, Mitani failed to establish her prima facie case under the *McDonnell Douglas* test.

### b. Conclusion

Based on the above, we conclude that the district court properly granted IHC's motion for summary judgment on Mitani's sex discrimination claim under Title VII.

### 2. Retaliatory Discharge

Mitani next contends that IHC retaliated against her when they created the Regional Hospitality Manager position with a bachelors degree requirement. We disagree.

Under Title VII, an employer may not discriminate against an employee in retaliation for the employee's opposition to unlawful[1] employment practices. *See* 42 U.S.C. § 2000e-3(a). Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . *because [the employee] has opposed any practice made an unlawful employment practice* by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Id.* (emphasis added).

---

[1]We note that Mitani can succeed in her retaliation case, even if IHC did not in fact act unlawfully. It is well settled that a violation of the retaliation provision can be found whether or not the challenged practice is ultimately found unlawful. *Love v. Re/Max of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).

In order to establish a prima facie case of retaliation, Mitani must establish that (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding,[2] (2) adverse employment action was taken against her subsequent to or contemporaneously with the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994). "To prevail on a retaliatory discharge claim, a plaintiff must establish that the decision to terminate her resulted from retaliatory animus." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999).

Mitani's retaliation claim suffers from the same fatal flaw as does her sex discrimination claim, namely, she has failed to demonstrate that she suffered an adverse employment decision.    Thus, Mitani cannot meet her burden of establishing the elements of her prima facie case.

### III.  Conclusion

For the reasons set forth above, we AFFIRM the entry of summary judgment for the defendant on the plaintiff's Title VII sex discrimination and

---

[2]Under the first element, we limit our consideration to Mitani's informal inquiry to the UALD on August 19, 1998.  Mitani's subsequent filing of a formal charge with the UALD cannot form the  basis for her retaliation claim because her job had already been restructured when she filed the formal charge.

retaliatory discharge claims.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Chief Circuit Judge